**No.**

# In the
# United States Court of Appeals
# for the Federal Circuit

IN RE DATABRICKS, INC.,

*Petitioner.*

On Petition for a Writ of Mandamus to the
United States District Court for the Eastern District of Texas
Case No. 4:23-cv-01147-ALM
Hon. Amos L. Mazzant

## PETITION FOR A WRIT OF MANDAMUS

MICHAEL SACKSTEDER
FENWICK & WEST LLP
555 California Street
Suite 1200
San Francisco, CA 94104
(415) 875-2300
msacksteder@fenwick.com

December 19, 2024

JONATHAN TAMIMI
JESSICA KAEMPF
FENWICK & WEST LLP
401 Union Street
5th Floor
Seattle, WA 98101
(206) 389-4510
jtamimi@fenwick.com
jkaempf@fenwick.com

*Counsel for Petitioner Databricks, Inc.*

 COUNSEL PRESS · (866) 703-9373

PRINTED ON RECYCLED PAPER

## CERTIFICATE OF INTEREST

For Petitioner Databricks, Inc.:

Counsel for Petitioner Databricks, Inc. certifies the following under Federal Circuit Rule 47.4:

1. The full name of every party or amicus represented by me is:

   Petitioner Databricks, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

   None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   Petitioner Databricks, Inc.

4. The names of all law firms and the partners or associates that appeared for the parties or amicus now represented by me in the trial court or agency or are expected to appear in this court (and who have not entered an appearance in this case) are:

   | Law Firm | Attorney |
   |----------|----------|
   | Fenwick & West LLP | Vigen Salmastlian; Dargaye H. Churnet; Gregory M. Sefian; Soojin E. Lee |
   | Formerly of Fenwick & West LLP | Su Li |

5. Other than the originating case number(s), the title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal:

   None.

6. All information required by Federal Rule of Appellate Procedure 26.1(b) and (c) that identifies organizational victims in criminal cases and debtors and trustees in bankruptcy cases:

    None.

Respectfully submitted,

December 19, 2024                    FENWICK & WEST LLP


By:   */s/ Michael J. Macksteder*
      Michael J. Sacksteder

      *Counsel for Petitioner*
      *Databricks, Inc.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ..................................................................i

RELIEF SOUGHT ....................................................................................1

ISSUE PRESENTED .................................................................................1

INTRODUCTION .....................................................................................1

STATEMENT OF FACTS .........................................................................5

    A.    R2 Accuses Databricks of Infringing a Patent Originally Issued to Yahoo! that Purports to Improve on Google Technology. ..............5

    B.    R2 Accuses Databricks Systems Built on Apache Spark—Two Systems Developed in the NDCA. ........................................................6

    C.    Other Third-Party Witnesses Reside in NDCA. ...................................8

    D.    R2 and its Parent Company, Acacia, Have Many Ties to California but Few to the EDTX. ........................................................10

    E.    The District Court Denies Databricks' Transfer Motion Despite Clear Evidence That This Case Belongs in the NDCA. .....................11

REASONS FOR ISSUING THE WRIT.....................................................16

    A.    The District Court Abused Its Discretion by Relying on the Electronic Storage of Evidence to Find that the Sources of Proof Factor Is Neutral. ...............................................................18

    B.    The District Court Abused Its Discretion by Discounting Third-Party Witnesses and Ruling that the Compulsory Process Factor Did Not Favor Transfer. ...........................................................22

    C.    The District Court Abused Its Discretion by Determining that Practical Problems Disfavor Transfer Because It Oversaw Several Long-Resolved Cases R2 Filed Against Different Parties. ...............................................................................................27

    D.    The District Court Abused Its Discretion in Finding That Court Congestion Disfavors Transfer Because R2 is a Non-Practicing Entity, and the District Court Improperly Relied on its Post-Motion Scheduling Order and Subsequent Case Developments. .......29

    E.    The Collective Weight of the Factors Proves that NDCA Is Clearly More Convenient. ................................................................31

CONCLUSION .......................................................................................33

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cloudera, Inc. v. R2 Solutions LLC*,
  IPR2024-00303 (P.T.A.B. Dec. 18, 2023) ...................................................13

*Databricks, Inc. v. R2 Solutions LLC*,
  IPR2024-00659 (P.T.A.B. Mar. 6, 2024) ................................................9, 13

*In re Adobe Inc.*,
  823 F. App'x 929 (Fed. Cir. 2020) .............................................................30

*In re Apple Inc.*,
  52 F.4th 1360 (Fed. Cir. 2022) ...................................................................25

*In re Apple Inc.*,
  979 F.3d 1332 (Fed. Cir. 2020) .......................................................18, 27, 30

*In re Apple Inc.*,
  No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ....................22

*In re Apple, Inc.*,
  No. 2022-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ............4, 32, 33

*In re Apple Inc.*,
  No. 2023-120, 2023 WL 2359699 (Fed. Cir. Mar. 6, 2023) ......................25

*In re Atlassian Corp.*,
  No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ...............23, 26

*In re DISH Network L.L.C.*,
  No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021) .....20, 21, 23, 24

*In re EMC Corp.*,
  501 F. App'x 973 (Fed. Cir. 2013) .............................................................27

*In re FedEx Corp. Servs., Inc.*,
  No. 2022-156, 2022 WL 10887770 (Fed. Cir. Oct. 19, 2022) .............*passim*

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) .............................................................29, 32

*In re Google LLC*,
  58 F.4th 1379 (Fed. Cir. 2023) .......................................................17, 20, 30

*In re Google LLC*,
  No. 2021-171, 2021 WL 4592280 (Fed. Cir. Oct. 6, 2021) .............21, 30, 31

*In re Google LLC*,
  No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) .....................18

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*In re Honeywell Int'l Inc.*,
  No. 2023-152, 2024 WL 302397 (Fed. Cir. Jan. 26, 2024) .......18, 28, 29, 33

*In re Hulu, LLC*,
  No. 2021-142, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021) ......23, 26, 31, 33

*In re Juniper Networks, Inc.*,
  14 F.4th 1313 (Fed. Cir. 2021) ....................................................21, 30, 31, 32

*In re Planned Parenthood Fed'n of Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022) ...................................................................24, 28

*In re Radmax*,
  720 F.3d 285 (5th Cir. 2013) ...........................................................................21

*In re Samsung Elecs. Co.*
  2 F.4th 1371 (Fed. Cir. 2021) ...............................................................*passim*

*In re TikTok*,
  85 F.4th 352 (5th Cir. 2023) ...........................................................................24

*In re TracFone Wireless, Inc.*,
  852 F. App'x 537 (Fed. Cir. 2021) .................................................................16

*In re TS Tech USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008) ...............................................................16, 17

*In re Verizon Bus. Network Servs. Inc.*,
  635 F.3d 559 (Fed. Cir. 2011) .........................................................28, 29, 33

*In re Volkswagen of Am., Inc.*,
  545 F.3d 304 (5th Cir. 2008) ...............................................................16, 17, 22

*R2 Sols. LLC v. Allegiant Travel Co.*,
  No. 4:22-cv-00537-ALM (E.D. Tex. June 28, 2022) ...................................11

*R2 Sols. LLC v. Databricks, Inc.*,
  No. 4:23-cv-1147, 2024 WL 5058965 (E.D. Tex. Dec. 10, 2024).........25, 28

*R2 Sols. LLC v. Redfin Corp.*,
  No. 4:21-cv-00945-ALM (E.D. Tex. Nov. 11, 2021) ...................................11

*R2 Sols. LLC v. Roadget Business Pte. Ltd.*.
  No. 4:24-cv-00971-ALM (E.D. Tex. Oct. 29, 2024) ...................................11

*R2 Sols. LLC v. Samsung Elecs. Am., Inc.*,
  No. 4:21-cv-00089-ALM (E.D. Tex. Jan. 29, 2021) ...................................11

# TABLE OF AUTHORITIES
## (CONTINUED)

Page(s)

STATUTES

28 U.S.C. § 1404(a) ...........................................................1, 11, 22, 25

## RELIEF SOUGHT

Databricks requests that this Court issue a writ of mandamus to the United States District Court for the Eastern District of Texas ("EDTX") vacating its order denying Databrick's motion to transfer and ordering it to transfer the pending case to the United States District Court for the Northern District of California ("NDCA").

## ISSUE PRESENTED

Whether the district court clearly abused its discretion in refusing to transfer the case pursuant to 28 U.S.C. § 1404(a).

## INTRODUCTION

This is not the first time this Court has considered a mandamus petition for transfer under § 1404(a), where the same plaintiff—R2 Solutions LLC ("R2")—asserted the same patent—U.S. Patent No. 8,190,610 ("the '610 Patent")—and the district court denied the defendant's motion to transfer from the Eastern District of Texas. *See In re FedEx Corp. Servs., Inc.*, No. 2022-156, 2022 WL 10887770 (Fed. Cir. Oct. 19, 2022) (per curiam). In *FedEx*, this Court vacated the district court's denial of transfer, and in doing so, recognized that R2's connection to EDTX was nothing more than a "recent, ephemeral, and an artifact of litigation," and that the proposed transferee venue is where the defendant "is headquartered and where accused products were researched, designed, and developed." *Id.* at *1-2. These same facts, along with many more, warrant mandamus directing the district court to transfer the case from EDTX.

1

Indeed, in this case, unlike *FedEx*, the transferee forum is also where the patented technology was researched, designed, developed. R2 asserts a patent issued to NDCA-based company Yahoo! based on work Yahoo!'s NDCA-based employees performed to improve a method of processing large datasets first developed in NDCA by Google. Two of the three named inventors reside in California—one in NDCA and one in the Central District. The third also resides on the West Coast, in Washington state.

The accused functionality is based on open-source software that originated as a research project that Databricks' founders developed at the University of California, Berkeley in NDCA. Databricks designed and developed the accused platform in NDCA, where Databricks has always maintained its headquarters. The engineering staff responsible for maintaining the Databricks platform is concentrated in NDCA. Almost all relevant documents were generated and are maintained in NDCA, where virtually every party and non-party witnesses—including inventors and prior art developers are located.

By contrast, this case has no relevant connection to EDTX. Databricks has no engineering personnel in EDTX. Its lone EDTX outpost, a WeWork office in the Dallas-suburb Plano, houses only a handful of customer support representatives with no involvement in research, design, or development of the accused functionalities. Even R2 lacks a meaningful connection to EDTX. R2's only discernible employee

in Texas—its president—lives in the Western District of Texas ("WDTX"), not in EDTX. Its purported "place of business" in EDTX is one that it shares with dozens of other patent-monetization entities owned by its parent company, Acacia. R2's only connection to EDTX is the 20+ litigations R2 has filed there, one in which the Federal Circuit vacated the district court's decision denying transfer, as this Court should do here. *FedEx*, 2022 WL 10887770, at *1.

Despite the case's overwhelming center of gravity in NDCA, the district court denied Databricks' motion for transfer. Appx1. In doing so, the district court abused its discretion in two ways.

*First*, the district court incorrectly analyzed four of the transfer factors. It contravened governing law when it found the sources of proof factor neutral based on Databricks' electronic storage of documents. It disregarded multiple non-party, California-based witnesses who would not be subject to compulsory process in EDTX. It erroneously concluded that its experience with R2's assertions of the asserted patent disfavor transfer. And it incorrectly relied on facts arising after Databricks filed its motion to conclude that court congestion disfavored transfer, even though R2 is an admitted non-practicing entity, and R2 does not allege that its claims are time sensitive.

*Second*, even accepting the district court's analysis of the six contested factors, it should have transferred the case. The district court determined that the

most important factor, the willing witness factor, favored transfer.  Appx8-10.  It also concluded that the local interest supported transfer to NDCA.  Appx13.  It found the sources of proof and compulsory process factors neutral and that they did not disfavor transfer.  Appx5-8.  So its decision to keep the case turned on its findings that two factors disfavored transfer:  (1) practical problems (due to alleged judicial efficiency) and (2) court congestion (based on its scheduling order entered after Databricks moved to transfer).  Appx12-13.  In other words, the district court abused its discretion by denying transfer when it found only the two most speculative and least important factors disfavor it.  *See In re Apple, Inc.*, No. 2022-128, 2022 WL 1196768, at *4-5 (Fed. Cir. Apr. 22, 2022) (district court abused its discretion in denying transfer based on a "co-pending suit … involv[ing] a different defendant with different hardware and different software" and based on court congestion without "any cited reason for why a more rapid disposition … would be important enough to be assigned significant weight in the analysis.").

Either of these errors independently warrants mandamus relief.  Combined, they even more strongly show a clear abuse of discretion.  The Court should grant Databricks' petition and direct the district court to transfer the case to NDCA.

## STATEMENT OF FACTS

### A.     R2 Asserts a Patent Originally Issued to Yahoo! that Purports to Improve on Google Technology.

R2 alleges that certain Databricks systems infringe the '610 Patent.  Appx20-40.  The asserted patent is entitled "MapReduce for Distributed Database Processing," Appx42, and purports to describe an "enhanced MapReduce programming methodology." Appx48 (1:30-45).

MapReduce is a "programming methodology to perform parallel computations over distributed (typically, very large) data sets." *Id.* (1:6-8).  Jeffrey Dean and Sanjay Ghemawat created MapReduce around 2004, while working for Google in Mountain View, California. *Id.* (1:8-16, 2:12-18).  The patent cites several publications by Messrs. Dean and Ghemawat as prior art. Appx42; Appx48 (1:6-16).  And both Mr. Dean and Mr. Ghemawat still work for Google and reside in the Bay Area.  Appx191; Appx196.

The '610 patent issued to Yahoo! in Sunnyvale, California.  Appx42.  The specification describes how its three Yahoo!-employed inventors—Ali Dasdan, Hung-Chih Yang, and Ruey-Lung Hsiao—tried to improve on Google's work.  In brief, the patent describes Yahoo's contribution to MapReduce as allowing for efficient processing of data from two or more related, but heterogenous, datasets in MapReduce.  Appx42 (Abstract), Appx48 (1:31-44).  Mr. Dasdan still lives in the

San Francisco Bay Area; Mr. Hsiao lives in Los Angeles; and Mr. Yang lives near Seattle.  Appx160; Appx170; Appx166.

In 2016, Yahoo! assigned the patent to Excalibur IP, which at that time was also based in Sunnyvale, California.  Appx174-175.  While holding the '610 patent, Excalibur licensed it to numerous companies, including several that, at the time they executed these licenses, were headquartered in NDCA.  Appx382 (¶ 9).

Excalibur IP then assigned the patent to R2.  Appx175.  The individual who negotiated and executed that transaction on behalf of R2 is Eric Lucas, who was R2's president at the time.  Appx183-184 (¶¶ 1, 5-7).  Mr. Lucas is a resident of Laguna Beach, California.  Appx187.

## B. R2 Accuses Databricks Systems Built on Apache Spark—Two Systems Developed in NDCA.

R2 asserts that Databricks' products, systems, and/or services "that utilize Apache Spark," including Databricks' Data Intelligence Platform and Lakehouse Platform, infringe the '610 patent.  Appx24 (¶ 7).

Apache Spark, an open-source analytics engine used for big data workloads and machine learning, (Appx147-148 (¶ 6)), "is at the heart of Databricks platform," *see* https://docs.databricks.com/en/spark/index.html (cited at Appx34 n. 6).  Apache Spark originated as a research project at the University of California, Berkeley ("UC Berkeley") in 2009.  Appx147-148 (¶ 6).  Its developers open-sourced the project in 2010 and donated it to the Apache Software Foundation in 2013.  *Id.*

Reynold Xin co-founded Databricks in 2013, in the San Francisco Bay Area. Appx148 (¶ 7).  Mr. Xin is currently Chief Architect of Databricks and, like all other co-founders of Databricks, still lives and works in the Bay Area.  Appx148 (¶¶ 7-8). The Bay Area is also where Databricks is, and always has been, headquartered, Appx147 (¶ 4).

Databricks designed and developed the accused platform through its engineering staff primarily based in Northern California.  Appx148 (¶¶ 7-9).  As of May 3, 2024, Databricks employed over 1,000 engineers in the U.S.  Appx148 (¶ 9). About 70 percent of them work in Databricks' Northern California offices in San Francisco, Mountain View, and Berkeley.  *Id.*; Appx147 (¶ 4).  The technical documents—including source code—concerning the design, development, and operation of the accused platform were created in NDCA.  Appx149 (¶ 11).

The greatest concentration of Databricks U.S. employees overall is also in Northern California.  Appx147 (¶ 4).  As of May 3, 2024, nearly 1,500 full-time Databricks employees worked in the Northern California offices.  *Id.*  That figure comprises by far the largest concentration of Databricks employees in one area anywhere in the country.  *Id.*

Key Databricks personnel with knowledge of its finances are also in NDCA. Appx148-149 (¶ 10).  That includes Dave Conte, Databricks' Chief Financial

Officer, who may be a witness in this case. *Id.* Databricks also generates its financial information and documentation in NDCA. Appx149 (¶ 11).

No Databricks employees that work on the research, design, or development of the accused platform live or work in EDTX. Appx149 (¶ 12); Appx754-55 (¶¶ 2-4). Databricks' only presence in EDTX is a WeWork office in Plano, Texas, outside of Dallas. Appx149 (¶ 12). Thirteen customer support employees are assigned to that WeWork location, and none was involved in the design or development of either Apache Spark or the accused Databricks platform. *Id.*; Appx755 (¶ 4).

### C.    Other Third-Party Witnesses Reside in NDCA.

As explained above, Google invented MapReduce technology. Appx48 (1:8-16, 2:12-18). Thus, in addition to the Google prior art cited on the face of the patent (Messrs. Dean's and Ghemawat's work), the relevant prior art includes other technology developed in NDCA. U.S. Patent No. 7,590,620 (Pike) lists Robert C. Pike, Sean Quinlan, Sean M. Dorward as inventors in addition to Messrs. Dean and Ghemawat. Appx198. Messrs. Pike and Quinlan, like Messrs. Dean and Ghemawat, reside in the Bay Area. Appx295; Appx297. Each of these NDCA residents is likely to know about Google prior art systems embodying MapReduce technology.

Other relevant prior art witnesses also live in NDCA. The first named inventor of U.S. Patent Publication No. 2006/0218123 (Chowdhuri) (Appx223),

Sudipto Chowdhuri, lives in Dublin, California (NDCA). Appx301. Another prior art inventor, Casey Kiernan, lives in Los Angeles. Appx304.[1] Both Messrs. Chowdhuri and Kiernan are likely to know of any systems embodying the patents they helped invent.

Databricks' motion identified those individuals because it, and several other parties, have filed *inter partes* review petitions seeking to invalidate the '610 patent based on those individuals' patents and publications. *See, e.g.*, *Databricks, Inc. v. R2 Solutions LLC*, IPR2024-00659, Paper No. 1 (P.T.A.B. Mar. 6, 2024).

R2 has also sought discovery from third parties under the subpoena power of NDCA. Although R2 did not list any of these third parties as having relevant information in its initial disclosures, on October 23, 2024, R2 subpoenaed four companies—two in California (one in NDCA), one in Philadelphia, and one in Cambridge, Massachusetts. Appx822; Appx846; Appx849; Appx870; Appx894. R2 initially sought no discovery from any Texas entity.

On Friday, November 8, Databricks notified the district court that R2's subpoenas bolstered Databricks' transfer request because they confirmed a connection between this case and NDCA. Appx817-818. The next business day, R2 launched four subpoenas to Texas-based entities, Appx921; Appx942; Appx963;

---

[1] Mr. Kiernan is listed as an inventor of U.S. Patent No. 6,343,295 (MacLeod). Appx272.

Appx984, and then asked the district court to consider R2's newly issued subpoenas as part of the transfer analysis, Appx917-918.

### D.    R2 and its Parent Company, Acacia, Have Many Ties to California but Few to EDTX.

R2 is a patent-monetization company that does not manufacture or produce any products. Appx382-383 (¶ 11); Appx787 (24:12-13). It was founded in Austin, Texas (in WDTX), in 2016, (Appx381 (¶ 4)), and New-York-based Acacia Research Group LLC—another patent monetization entity—acquired R2 in 2020, Appx382 (¶ 6); Appx323. Until 2021, R2's president was Eric Lucas, who lives in Southern California. Appx183 (¶ 1); Appx381 (¶ 2). Acacia's CEO Marc Booth, who signed R2's filings to the Texas Secretary of State, Appx309-311, and Acacia's agreement to purchase R2, Appx399, is based in Newport Beach, California. Appx313. Acacia's CFO, Kristin Hoover, also resides in Newport Beach, Appx325, which is near Acacia's Irvine, California office. Appx323.

R2's only Texas-based employee appears to be Craig Yudell. Appx381-382 (¶¶ 2, 7). But Mr. Yudell is not even a full-time employee of R2, as he also serves as Vice President of Licensing and Litigation at Acacia Research Corporation. Appx381 (¶ 2). Mr. Yudell has a residence in Austin, Texas, Appx382 (¶ 7), and claims that since Acacia acquired R2 in 2020, R2 "has since had a place of business located at 6136 Frisco Square Blvd., Suite 400, Frisco, Texas"—the location that R2 shares with at least 14 other patent-monetization entities in Acacia's corporate

family.  *Id.* (¶ 6); Appx178-179.[2]  R2 does not claim that it creates or stores any documents at its EDTX "place of business."  Rather, R2 contends that its relevant documents are at its lawyers' office, in Fort Worth, Texas (in NDTX).  Appx383 (¶ 14).

Other than the place of business it shares with numerous other Acacia entities and the 20+ lawsuits it has filed in the district, R2 asserts no other connection to EDTX.  Appx741.[3]

### E.    The District Court Denies Databricks' Transfer Motion Despite Clear Evidence That This Case Belongs in NDCA.

Databricks moved to transfer to NDCA under 28 U.S.C. § 1404(a) in May 2024, explaining that five factors (sources of proof, compulsory process, willing witnesses, court congestions, and local interest) favored or strongly favored transfer, and that the remaining factors were neutral.  Appx125-143.  R2 responded claiming that three factors (practical problems, court congestion, and local interest) weigh against transfer, and that the remaining factors are neutral.  Appx353-369.  R2 never

---

[2] The *Fedex* mandamus petition provided uncontested evidence that *sixty-seven* companies share that address with R2.  *Fedex*, No. 22-156, ECF No. 2, at 2, 30-31 (Fed. Cir. July 21, 2022).

[3] In addition to the 17 EDTX cases listed at Appx741, R2 has also asserted the '610 patent in one additional EDTX case, *R2 Sols. LLC v. Redfin Corp.*, 4:21-cv-00945-ALM (E.D. Tex. Nov. 11, 2021), and R2 filed three other lawsuits (involving other patents) in EDTX.  *See R2 Sols. LLC v. Roadget Business Pte. Ltd.*. 4:24-cv-00971-ALM (E.D. Tex. Oct. 29, 2024); *R2 Sols. LLC v. Allegiant Travel Co.*, 4:22-cv-00537-ALM (E.D. Tex. June 28, 2022); *R2 Sols. LLC v. Samsung Elecs. Am., Inc.*, 4:21-cv-00089-ALM (E.D. Tex. Jan. 29, 2021).

moved for venue-related discovery and did not ask to depose Databricks' declarant. The motion was fully briefed on June 28, Appx756; Appx762, and the district court held a hearing on September 4, Appx764.

On December 2, six months after Databricks filed its motion, and almost exactly two hours before the *Markman* hearing, Appx346, the district court entered its order denying Databricks' transfer motion. Appx1-14. The district court first agreed that R2 could have brought the case in NDCA, noting that "Defendant is headquartered in Northern California, and the accused instrumentalities were designed and developed there." Appx4. The district court then analyzed the private and public interest factors to find that "two favor transfer, two disfavor transfer, and the remaining are neutral." *Id.*

The district court determined that the relative ease of access to sources of proof (private factor 1) was "neutral because the bulk of the relevant evidence is equally accessible in either venue." Appx6. According to the district court, "the overwhelming bulk of evidence is digital and, therefore, as accessible in this district as" NDCA. *Id.* So even though R2 did "not dispute that relevant documents are primarily generated and stored in NDCA," that "key document custodians reside in NDCA," and that Databricks' EDTX-based "employees are irrelevant because they work in customer support, not in research or development," the district court found this factor neutral. Appx5-6.

The district court also determined that compulsory process (private factor 2), was neutral, despite acknowledging that two of the three inventors of the '610 patent, the Google witnesses, and six other "individuals knowledgeable about relevant prior art systems" reside in California (all but one in NDCA), where they would be subject to compulsory process. Appx6. The district court discounted these witnesses for two reasons. First, it determined that because Databricks had not shown any of these witnesses were unwilling to voluntarily appear at trial, this factor should receive "less weight." Appx8. Second, it stated that because Databricks had yet to serve its invalidity contentions when it filed its transfer motion, Databricks' identification of prior art witnesses was "premature" and should not be factored into its analysis. *Id.* In effect, the district court penalized Databricks for promptly moving to transfer. The district court also acknowledged Databricks' argument that the prior art was cited to in IPRs seeking to invalidate the asserted patent, but disregarded those IPRs on the incorrect basis that the IPR petition was in a "*different* case with *different* parties asserting *different* claims." *Id.* (emphasis in original).[4]

The district court concluded that the cost of attendance for willing witnesses (private factor 3) favored transfer since "relevant potential witnesses reside in

---

[4] Databricks filed an IPR petition substantively identical to that filed in *Cloudera, Inc. v. R2 Solutions LLC*, IPR2024-00303, and sought joinder of the two IPR proceedings, *Databricks, Inc. v. R2 Solutions LLC*, IPR2024-00659, Paper No. 3 (P.T.A.B. Mar. 6, 2024).

NDCA, including [Databricks'] Chief Architect of the accused product and engineers aiding with design and development." Appx10.

The district court decided that practical problems (private factor 4) "weighs against transfer, but only slightly." Appx11. Here, the district court relied on the 16 prior, long-resolved cases R2 had filed before it—even though none of those cases proceeded past claim construction—and the two *Markman* orders it issued concerning the '610 patent. *Id.* It distinguished Federal Circuit authority holding that a court's prior orders are "too tenuous a reason to support denial of transfer" because its prior *Markman* order was only three years old, while the cited caselaw addressed a situation where the earlier case settled five years before. Appx11.

The district court then turned to the public interest factors, first concluding that court congestion (public factor 1) "weighs against transfer." Appx12-13. The district court did so despite acknowledging that its "docket is notoriously busy," relying on the fact that it had entered a scheduling order in this case *after* Databricks filed its motion setting trial for Summer of 2025. Appx13. The district court further relied on additional evidence post-dating Databricks' motion—i.e., that in the court's view, "this case is proceeding to trial at the pace" set out in its order. Appx13.

Next, for the second public interest factor—the local interest—the district court determined that NDCA had a "significant interest stemming from the accused product's research, design, and development in" NDCA. Appx13.

Neither party offered arguments argued regarding the remaining public interest factors—familiarity with governing law and conflict of laws issues—so the district court found those factors neutral. Appx14.

*     *     *

The district court denied Databricks' motion, while acknowledging that it "represents a close call." The court concluded that "transferring such a case to NDCA would yield minor, if any, gains at best, rather than the significant gain required to actually materialize in NDCA to warrant transfer." Appx5.

The same district court that denied Databricks' motion previously denied a motion to transfer in another case filed by R2. *See FedEx*, 2022 WL 10887770, at *1. In that case, FedEx moved to transfer to the Western District of Tennessee, where FedEx was headquartered and where it designed and developed the accused products. *Id.* Following the district court's denial of the motion to transfer, FedEx filed a petition for a writ of mandamus. *Id.* In response, the Federal Circuit vacated the district court's order and remanded for additional proceedings, concluding that the district court "erred in its analysis" regarding the local interest factor and "failed to provide a sufficient explanation for its conclusions" regarding the witness-related factors. *Id.* at *2-4.

Unlike in *FedEx*, the district court here properly found that both the local interest factor and the willing witness factor strongly favor transfer. Appx8-10;

Appx13.  Yet, it nonetheless denied Databricks' motion, even though the facts in this case more strongly favor transfer than those in *FedEx*.  Here, NDCA is not only where Databricks is headquartered and where the accused products were researched, designed, and developed, but also where the patented technology was developed and where several third-party witnesses are based, including a named inventor and multiple prior-art witnesses.

## REASONS FOR ISSUING THE WRIT

A party seeking mandamus must (1) show a "clear and indisputable" right to the writ; (2) have "no other adequate means to attain the relief he desires"; and (3) demonstrate that "the writ is appropriate under the circumstances." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 308, 311 (5th Cir. 2008) (en banc) (quoting *Cheney v. U.S. Dist. Ct.*, 542 U.S. 367, 380–81 (2004)).  "In transfer cases, those requirements generally coalesce into one inquiry: whether the district court's denial of transfer amounted to a clear abuse of discretion under governing legal standards."  *In re TracFone Wireless, Inc.*, 852 F. App'x 537, 538 (Fed. Cir. 2021) (citing *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)); *see also In re Samsung Elecs. Co.* 2 F.4th 1371, 1375, 1379–81 (Fed. Cir. 2021).  A district court clearly abuses its discretion when it "(1) relies on clearly erroneous factual findings; (2) relies on erroneous conclusions of law; or (3) misapplies the law to the facts."

*Volkswagen*, 545 F.3d at 310 (quoting *McClure v. Ashcroft*, 335 F.3d 404, 408 (5th Cir. 2003)).

The Fifth Circuit analyzes private and public interest factors to compare the relative convenience of the venues.[5]  The private interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen*, 545 F.3d at 315 (citation omitted).  The public interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id*. (citation omitted).  A court should transfer a case when the movant has shown that the transferee venue is "clearly more convenient" than the transferor venue. *Id*.  The factors are "based not on per se rules but rather on an individualized, case-by-case consideration of convenience and fairness." *In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023).

---

[5] "[T]his court applies the laws of the regional circuit in which the district court sits," when reviewing a transfer decision. *TS Tech*, 551 F.3d at 1319.

17

Because the district court refused to transfer this case despite every factor favoring transfer or being neutral, Databricks has no other adequate means by which to attain its requested relief.

As explained below, the district court clearly abused its discretion by disregarding unrebutted and uncontested evidence to make clearly erroneous factual findings, ignoring and misapplying the law, and incorrectly weighing the transfer factors. Each of the district court's errors provides an independent basis for mandamus. Taken together, they demonstrate the depth of the court's error.

### A. The District Court Clearly Abused Its Discretion by Relying on the Electronic Storage of Evidence to Find that the Sources of Proof Factor Is Neutral.

When analyzing this factor, courts must consider "the location of document custodians and location where documents are created and maintained, which may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021) (per curiam); *In re Honeywell Int'l Inc.*, No. 2023-152, 2024 WL 302397, at *3 (Fed. Cir. Jan. 26, 2024) (this factor favors transfer where "[c]ustodians of relevant records" are located in the transferee district). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

Databricks generated its relevant documents in NDCA, where its key document custodians reside. Dr. Xin—Databricks' co-founder—and his team of engineers designed and developed the accused platform based on the Berkeley-created Apache Spark, mainly in NDCA. Appx148 (¶¶ 7-9). Databricks' engineering staff now maintains the accused platform, and more than 70% of them work from Databricks' three NDCA offices. Appx147-149 (¶¶ 4, 9, 11). Databricks also generates its financial records in NDCA, where its CFO resides. Appx148-149 (¶¶ 10-11). In short, all of Databricks' relevant evidence is generated and maintained in NDCA, and the key documents custodians live there. Appx147-149 (¶¶ 7-11).

The same is true for documents related to R2 and its patent. The individual who negotiated R2's acquisition of the '610 patent and other individuals who transact business on behalf of R2 live in California, Appx183-184 (¶¶ 1, 5-7); Appx187; Appx309-311; Appx399; Appx313; Appx323; Appx325, as do two of the three named inventors and the original assignee of the '610 patent, Yahoo!. Appx42; Appx160; Appx166; Appx170.

By contrast, neither party keeps any relevant proof in EDTX. Databricks neither keeps nor maintains any relevant documents at the Plano WeWork location, and none of its thirteen Plano-based employees are members of the engineering team. Appx149 (¶ 12). R2 concedes that it had no evidence in EDTX. Instead, it contends that its relevant documents are stored outside the district at its lawyers'

office.  Appx383 (¶ 14).  Consistent with these facts, the district court's order identified no relevant proof in EDTX.  Appx5-6.

This Court has found an abuse of discretion when a district court found this factor neutral on virtually identical facts.  *See Google*, 58 F.4th 1379.  In *Google*, the accused infringer sought transfer from WDTX to NDCA.  *Id.* at 1381.  As Databricks did here, Google presented undisputed evidence that its accused products "were researched, designed, and developed at Google's headquarters within the Northern District." *Id.*  Also like Databricks, Google highlighted that "key personnel with knowledge about the technical and financial issues, and four of the six named inventors[] were primarily located in the Northern District, [] and no witnesses or source of proof were located in the Western District." *Id.*  On those facts, this Court held that the district court's conclusion that the sources of proof factor was neutral "was clearly erroneous as this factor favors transfer." *Id.* at 1385; *see also In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *2 (Fed. Cir. Oct. 21, 2021) (holding that "the district court erred in not weighing the sources of proof factor in favor of transfer" where it was "undisputed that DISH's documents relevant to this case are stored at its headquarters in Colorado and that no sources of proof are in Western Texas."). The district court likewise abused its discretion in this case.

The district court's reliance on the electronic storage of documents cannot change this conclusion.  Even for electronic records "the question is of *relative* ease

of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis in original). "And while electronic storage of documents makes them more widely accessible than was true in the past, that does not make the sources-of-proof factor irrelevant." *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021).

This Court has therefore repeatedly held that a district court abuses its discretion in determining the sources of proof factor is neutral or disfavors transfer simply because a defendant stores its records electronically. *DISH*, 2021 WL 4911981, at *2 ("The district court found this factor was neutral solely because DISH's documents are 'stored electronically.' [] That was error."); *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *7 (Fed. Cir. Oct. 6, 2021) (holding that the ability to access electronically stored documents outside of transferee forum does not warrant denying transfer where "a significant number of documents relating to [] marketing, finances, and sales, were created and are maintained in the Northern District of California.").

In sum, there was no basis for the district court to have weighed the sources-of-proof factor as neutral. The vast majority of relevant evidence resides in NDCA, and the ability to access electronically stored documents does not justify finding this factor neutral.

**B.    The District Court Abused Its Discretion by Discounting Third-Party Witnesses and Ruling that the Compulsory Process Factor Did Not Favor Transfer.**

Private factor 2 focuses on "the availability of compulsory process to secure the attendance of witnesses." *Volkswagen*, 545 F.3d at 315. "The venue's ability to compel testimony through subpoena power is ... an important factor in the § 1404(a) calculus," and "will weigh heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *3 (Fed. Cir. Nov. 15, 2021) (per curiam) (citations omitted).

Here, Databricks identified nearly a dozen relevant third parties within the subpoena power of NDCA.  Those include five relevant prior art witnesses (Appx191; Appx196; Appx295; Appx297; Appx301; Appx304), two of the three named inventors (Appx42; Appx160; Appx166; Appx170), third parties R2 itself identified as having relevant knowledge (Appx822; Appx846; Appx849), and even several individuals with knowledge of R2's business transactions related to the '610 patent (Appx183-184 (¶¶ 1, 5-7); Appx187; Appx309-311; Appx399; Appx313; Appx323; Appx325).  By contrast, R2 identified only a single individual[6]—the

---

[6] Other than the four companies R2 subpoenaed solely to affect the transfer analysis.  Appx917-918; Appx921; Appx942; Appx963; Appx984.

original owner of R2—who had already sold the company to Acacia by the time R2 acquired the '610 patent. Appx382 (¶¶ 6, 8).

Under these facts, the district court should have determined that this factor favors transfer. *In re Atlassian Corp.*, No. 2021-177, 2021 WL 5292268, at *2 (Fed. Cir. Nov. 15, 2021); *DISH*, 2021 WL 4911981, at *3. For example, in *DISH*, the defendant similarly "identified prior-art witnesses and former employees knowledgeable about the design and development of the accused product" in the transferee venue, and this Court held that the district court's "finding that this factor was neutral was based on clear legal error." 2021 WL 4911981, at *3. This factor more strongly favors transfer here than in *DISH*, given the heightened importance of the prior art witnesses "specifically mentioned in the asserted patent." *In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021).

Yet the district court determined this factor was neutral for two reasons. First, it dismissed *every* witness as not relevant because the record lacked evidence that these witnesses would not voluntarily show up at trial. Appx8. Second, it discounted Databricks' prior art witnesses because Databricks moved to transfer before serving its invalidity contentions. *Id.* This, according to the district court, meant there was no basis to determine whether they were relevant. *Id.* Both bases are erroneous.

The district court erred first by discounting all third-party witnesses as irrelevant because the record lacked evidence that they were unwilling to attend trial.

Contrary to the district court's analysis, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *DISH*, 2021 WL 4911981, at *3 (quoting *In re HP, Inc.*, 2018 WL 4692486, at *3 n.1 (Fed. Cir. Sept. 25, 2018)). Rather than address this Court's precedent, the district court relied on dicta from the Fifth Circuit's opinion in *In re TikTok*: "we cannot say that the district court committed a clear abuse of discretion in holding that this factor is neutral when petitioners have failed to identify any unwilling non-party witness." 85 F.4th 352, 361 (5th Cir. 2023). But *TikTok*'s dicta was limited to facts in *that non-patent* case, and it does not suggest that a district court can side-step a case-specific analysis whenever the record is asserted to lack evidence that witnesses are unwilling to attend trial. Indeed, *TikTok* states that witnesses not proven to be unwilling receive "*less* weight"—not that a court should disregard such witnesses entirely in the compulsory process analysis. *Id.* (emphasis added) (quoting *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630-31 (5th Cir. 2022)). *TikTok* is thus consistent with *HP* and *DISH*, and does not disturb the presumption that non-party witnesses are unwilling to testify absent proof to the contrary.

Second, the district court erred by concluding that the prior art witnesses are not relevant because Databricks had yet to serve its invalidity contentions. Appx8. To begin with, this penalized Databricks because it promptly moved to transfer. The

entire purpose of Section 1404 is to "prevent the waste of time, energy and money" parties face while litigating in an inconvenient forum. *See In re Apple Inc.*, 52 F.4th 1360, 1361 (Fed. Cir. 2022) (quotation omitted). The statute's intent is "thwarted where [] defendants must partake in" unnecessary litigation while waiting for a transfer order. *Id*.[7] Requiring a defendant to delay filing a transfer motion until after it expends significant resources outlining its invalidity case is antithetical to the statute's purpose. The district court abused its discretion by giving no weight to the prior art witnesses Databricks identified because Databricks moved to transfer before serving its invalidity contentions. Appx8.

The district court's analysis is also contrary to law because Databricks explained in detail why these prior art witnesses are relevant. Messrs. Dean and Ghemawat are relevant because they invented MapReduce, the '610 patent admits

---

[7] For that reason, this Court has issued writs of mandamus ordering district courts to promptly rule on transfer motions. *See, e.g., Apple*, 52 F.4th at 1361. It has directed "that decision of a transfer motion must proceed expeditiously as the first order of business," *id.* at 1363, and that a district court should "timely decide the transfer motion before proceeding further substantive matters beyond the *Markman* hearing." *In re Apple Inc.*, No. 2023-120, 2023 WL 2359699, at *2 (Fed. Cir. Mar. 6, 2023).

The district court here, however, did not prioritize ruling on Databricks' motion. The briefing was complete in July and the district court held a hearing in early September, Appx756; Appx762; Appx764, but it did not issue its order until three months later, the same day it held the *Markman* hearing, Appx1; Appx346. By contrast, the district court issued its claim construction order—an issue the parties had not starting briefing until after transfer motion briefing was complete, Appx346—eight days after the *Markman* hearing. *R2 Sols. LLC v. Databricks, Inc.*, No. 4:23-cv-1147, 2024 WL 5058965 (E.D. Tex. Dec. 10, 2024).

25

their publications are prior art, and because they know of Google's implementations of MapReduce. Appx42; Appx48 (1:6-16); *Hulu*, 2021 WL 3278194, at *3. As to these third parties, the district court "improperly substituted its own assumption that prior art witnesses are unlikely to testify in place of specific reasons to believe that the prior art witnesses would [not] be relevant." *Atlassian*, 2021 WL 5292268, at *2. This was error, as "[s]uch categorical rejection of [] witnesses entirely untethered to the facts of the particular case is an abuse of discretion." *Id.*

The four other identified witnesses are also relevant because Databricks filed an IPR seeking to invalidate the '610 patent based on publications listing these individuals as authors. Appx198.[8] The district court justified overlooking these witnesses by stating, incorrectly, that the IPR "petitions were drafted in a *different* case with *different* parties asserting *different* claims." Appx8 (emphasis in original). But in fact, Databricks was one of the parties that filed an IPR asserting this prior art.[9] Appx133 (n.5). The district court also stated that "[a]n IPR's citation to prior art is no substitute for an independent analysis of the prior art's relevance to this case." Appx8. But Databricks' IPR petition did more than merely cite to the prior art in question; it contained detailed explanations of how these references invalidate

---

[8] The Pike inventors include Messrs. Dean and Ghemewat as well, and the patent was assigned to Google, Appx198, and relates to implementations of MapReduce, Appx212 (8:34-45).

[9] As noted above, Databricks' IPR petition was substantively identical to that filed in the Cloudera IPR, and Databricks moved for joinder of the proceedings.

R2's asserted claims.  Those assertions show the relevance of these publications and their authors to this case.

### C. The District Court Abused Its Discretion by Determining that Practical Problems Disfavor Transfer Because It Oversaw Several Long-Resolved Cases R2 Filed Against Different Parties.

This factor considers "practical problems that make a trial easy, expeditious and inexpensive." *Apple*, 979 F.3d at 1342.  It favors transfer (or at least is neutral) because at the time Databricks filed its motion, the case was in its infancy, Appx345,[10] there were (and still are) no co-pending litigations in EDTX, and because relevant witnesses and sources of proof are all in NDCA (*see supra*) transfer would minimize the burden and expense of travel.

The district court found this factor weighed against transfer, however, because of its experience with the '610 patent, including two *Markman* orders issued in prior R2 litigations.  Appx11-12.  While the district court's experience is a "permissible consideration[]," "it does not carry much weight."  *In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013).  And "incremental gains" in judicial economy that might result from denying transfer "simply are not sufficient to justify overriding the inconvenience to the parties and the witnesses." *Samsung*, 2 F.4th at 1379–80.

---

[10] Databricks filed its motion before the district court entered its scheduling order. Appx144; Appx345.

That is even more so where the prior litigations ended long ago and involved different parties with different accused products. The district court acknowledged Federal Circuit precedent holding that a court's prior orders are "too tenuous a reason to support denial of transfer." Appx11-12 (citing *In re Verizon Bus. Network Servs. Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011). But it distinguished *Verizon* because there the *Markman* order was five years old, while here the district court's first *Markman* order was just under three years old when it issued its decision (its second was eighteen-months old). Appx11-12. *Verizon* nevertheless should apply here, because this is still a considerable lapse in time and, as in *Verizon*, the district court also had to "familiarize itself with reexamination [i.e., IPR] materials that were not part of the record during the previous suit." *Verizon*, 635 F.3d at 562; *R2 Sols.*, 2024 WL 5058965 at *14 (holding that R2's statements in IPR proceedings "rise to the level of a 'clear and unmistakable' disclaimer of claim scope").

And setting aside the fact that R2's prior suits never significantly progressed past *Markman*, those cases "involve[d] different defendants with different hardware and different software and are therefore likely to involve significantly different discovery, evidence, and issues." *Honeywell*, 2024 WL 302397, at *3; *see also Planned Parenthood*, 52 F.4th at 632 n.5. Thus, R2's prior cases do not warrant denying transfer here.

While the district court hedged that this factor weighs against transfer "only slightly," that determination was still an abuse of discretion.  It should have found it at least neutral, or more appropriately as favoring transfer because relevant witnesses and sources of proof are mainly in NDCA.  *Samsung*, 2 F.4th at 1379-80; *Honeywell*, 2024 WL 302397, at *3; *Verizon*, 635 F.3d at 562.  And it should not have concluded that the admittedly "limited" judicial economy gains from keeping this case warranted denying transfer.  Appx12.

**D.    The District Court Abused Its Discretion in Finding That Court Congestion Disfavors Transfer Because R2 is a Non-Practicing Entity, and the District Court Improperly Relied on its Post-Motion Scheduling Order and Subsequent Case Developments.**

Courts afford the congestion factor the least weight because it "appears to be the most speculative."  *In re Genentech, Inc.*, 566 F.3d 1338, 1347 (Fed. Cir. 2009).  "And when other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh those other factors.'" *Id.*

Here, the district court rejected R2's attempt to show EDTX would be faster to trial.  It determined that R2's statistics were "too general to be helpful," because "[r]ather than compare NDCA with the Court's docket specifically," R2 "compares NDCA with the Eastern District of Texas generally."  Appx12.  And the district court acknowledged that its own "docket is notoriously busy."  Appx13.  That should have

ended the district court's inquiry and resulted in a determination that this factor was neutral if not favoring transfer.

This conclusion finds additional support in the fact that R2 is a non-practicing entity. Appx382-383 (¶ 11); Appx787 (24:12-13). Because R2 "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution and give some significance to the time-to-trial difference" it is "a clear abuse of discretion to accord [the court congestion] factor any weight." *Google*, 58 F.4th at 1383; *Juniper*, 14 F.4th at 1322 (district court erred in finding factor weighed against transfer where "the court did not point to any reason that a more rapid disposition of the case that might be available in Texas is worthy of important weight").

Yet the district court determined this factor disfavored transfer because, "by all indications, this case is proceeding to trial at the pace set out in the Scheduling Order and will likely conclude faster in this Court than in NDCA." Appx13. This was problematic for two reasons.

First, a district court may not "assess the court congestion factor based on … an aggressive scheduling order for setting a trial date." *Juniper*, 14 F.4th at 1322. The district court thus erred by relying on its post-motion scheduling order to deny transfer. *See id.*; *Samsung*, 2 F.4th at 1380–81; *Apple*, 979 F.3d at 1344; *In re Adobe Inc.*, 823 F. App'x 929, 932 (Fed. Cir. 2020); *Google*, 2021 WL 4592280, at *6.

Second, the district court relied on other facts arising after Databricks filed its motion—i.e., that this "case is proceeding to trial at the pace set out in the Scheduling Order." Appx13. But the district court needed to evaluate "the situation which existed when suit was initiated." Appx7 n.1 (quoting *EMC*, 501 F. Appx. at 976). So, its reliance on facts arising even after briefing was completed was also an abuse of discretion.

### E. The Collective Weight of the Factors Proves that NDCA Is Clearly More Convenient.

Under a proper analysis of each factor, NDCA is clearly the more convenient forum. The district court correctly determined that willing witness convenience and local interest favored transfer. Appx8-10; Appx13. As explained above, it erred by finding the source-of-proof and compulsory-process factors neutral rather than favoring transfer, and that the practical problems and court congestion factors disfavored transfer. In sum, the consideration before this Court is whether transfer is warranted where, of the six relevant factors, the four most important favor transfer and the two least important are neutral. This Court's caselaw universally requires transfer under these facts. *Juniper*, 14 F.4th at 1323; *Samsung*, 2 F.4th at 1380; *Hulu*, 2021 WL 3278194, at *5; *Google*, 2021 WL 4592280, at *7.[11]

---

[11] *FedEx* vacated an order denying transfer entered by the same district court that denied Databricks' motion. 2022 WL 10887770. While here the district court attempted to avoid the errors committed in *FedEx* by finding that the local interest and willing witness factors favor transfer, it nonetheless erred by weighing the

Even if this Court determines that the district court did not err in its analysis of the four factors discussed above, it was still an abuse of discretion for it to deny transfer. Even assuming only the convenience of party witnesses and local interest favored transfer, those carry much more weight than court congestion and practical problems. This court has explained that the convenience of the potential witness is "probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343. And that Court congestion is afforded the least weight of all transfer factors because it "appears to be the most speculative." *Id.* at 1347. The district court's analysis leaves no doubt "the center of gravity of the action [is] clearly in the transferee district." *Juniper*, 14 F.4th at 1323. And where that is the case, it is an abuse of discretion for a district court to conclude that court congestion and practical problems alone warrant denying transfer.

For example, in *Apple*, 2022 WL 1196768, at *4-5, this Court held that the district court abused its discretion in not transferring that case where the only factors that plausibly favored keeping the case were practical problems and court congestion. This Court determined that even co-pending litigation involving the

---

factors in a manner that led it to deny transfer. Indeed, this case presents an even stronger case for transfer than *FedEx* because the proposed transferee forum is not only where Databricks is headquartered and where the accused products were researched, designed, and developed, but it is also the same forum where the patent was developed and several prior art witnesses, including named inventors, are located.

same patent was insufficient to keep the case in Texas based on judicial economy because those cases involved different defendants with different accused products. *Id.* at \*4. And it likewise rejected court congestion as a valid basis to deny transfer where the district court cited only its scheduling order as evidence it could try the case faster, "given the striking imbalance favoring transfer based on the convenience factors and lack of any cited reason for why a more rapid disposition of the case that might be available in [WDTX] would be important enough to be assigned significant weight in the analysis." *Id.* at \*5. The only difference between this case and *Apple* is that rather than rely on co-pending litigation, the district court cited its past cases. Appx12. Thus, the case for transfer here is even stronger than in *Apple*. *See also Samsung*, 2 F.4th at 1380; *Verizon*, 635 F.3d at 562; *Honeywell*, 2024 WL 302397, at \*3; *Hulu*, 2021 WL 3278194, at \*5.

## CONCLUSION

The Court should grant Databricks' petition, vacate the district court's order, and remand with instructions to transfer this case to NDCA.

Respectfully submitted,

December 19, 2024                FENWICK & WEST LLP


By:  */s/ Michael J. Sacksteder*
      Michael J. Sacksteder

*Counsel for Petitioner*
*Databricks, Inc.*

## CERTIFICATE OF COMPLIANCE WITH
## TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS,
## AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Circuit Rule 21(d)(1). This brief contains 7797 words, excluding the parts of the brief exempted by the rules.

2.      This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman.


December 19, 2024                          FENWICK & WEST LLP


                                          By:    */s/ Michael J. Sacksteder*
                                                 Michael J. Sacksteder

                                          *Counsel for Petitioner*
                                          *Databricks, Inc.*

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF SERVICE

**Case Number**  24-

**Short Case Caption**  Petition for Writ of Mandamus

---

**NOTE:** Proof of service is only required when the rules specify that service must be accomplished outside the court's electronic filing system.  See Fed. R. App. P. 25(d); Fed. Cir. R. 25(e).  Attach additional pages as needed.

---

I certify that I served a copy of the foregoing filing on 12/19/2024

by ☐   U.S. Mail   ☐   Hand Delivery   ☑ Email   ☐ Facsimile
☑   Other: Overnight Federal Express

on the below individuals at the following locations.

| Person Served | Service Location (Address, Facsimile, Email) |
|---|---|
| Judge Amos L. Mazzant, III | Paul Brown United States Courthouse (VIA OVERNIGHT FEDERAL EXPRESS)<br>101 East Pecan Street<br>Sherman, TX 75090<br>(903) 893-7008 |
| Edward R. Nelson III<br>Brent N. Bumgardner | Nelson Bumgardner Conroy PC (VIA EMAIL)<br>3131 West 7th Street, Suite 300<br>Fort Worth, TX 76107<br>(817) 377-9111<br>ed@nelbum.com<br>brent@nelbum.com |
| Christopher G. Granaghan<br>Carder W. Brooks | Nelson Bumgardner Conroy PC (VIA EMAIL)<br>3131 West 7th Street, Suite 300<br>Fort Worth, TX 76107<br>(817) 377-9111<br>chris@nelbum.com<br>carder@nelbum.com |
| Jinming Zhang<br>John Paul Murphy | Nelson Bumgardner Conroy PC (VIA EMAIL)<br>3131 West 7th Street, Suite 300<br>Fort Worth, TX 76107<br>(817) 377-9111<br>jinming@nelbum.com<br>murphy@nelbum.com |
|  |  |

☐   Additional pages attached.

Date: 12/19/2024

Signature:   /s/ Michael J. Sacksteder

Name:   Michael J. Sacksteder