No. 2025-113

# United States Court of Appeals
# For the Federal Circuit

**In re: Databricks, Inc.,**
**Petitioner**

On Petition for a Writ of Mandamus to the United States District Court
for the Eastern District of Texas,
Case No. 4:23-cv-01147-ALM
Hon. Amos L. Mazzant, III

## RESPONDENT R2 SOLUTIONS LLC'S RESPONSE TO
## PETITION FOR WRIT OF MANDAMUS

January 3, 2025

Edward R. Nelson III
Christopher G. Granaghan
Carder W. Brooks
Jinming Zhang
NELSON BUMGARDNER CONROY PC
3131 West 7th Street, Suite 300
Fort Worth, TX  76107
Tel: (817) 377-9111
*Attorneys for Respondent*
*R2 Solutions LLC*

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................... 1

II.   FACTUAL BACKGROUND ................................................. 2

III.  LEGAL STANDARD .......................................................... 4

IV.   DATABRICKS HAS FAILED TO SHOW MANDAMUS IS
      WARRANTED. ................................................................... 7

   A.  The District Court Reasonably Denied Transfer Under Its
       Analysis of the Factors. ..................................................... 8

   B.  The District Court Reasonably Determined That the Relative
       Ease of Access to Sources of Proof Is Neutral. ................... 9

   C.  The District Court Reasonably Determined That the Availability
       of Compulsory Process to Secure Witness
       Attendance Is Neutral. ..................................................... 14

   D.  The District Court Reasonably Determined That Practical
       Problems Disfavor Transfer. ........................................... 21

   E.  The District Court Reasonably Determined That Court
       Congestion Disfavors Transfer. ....................................... 23

   F.  The Evidence Relative to the Cost of Attendance for Willing
       Witnesses and the Local Interests Reinforces That the District
       Court's Decision Was Reasonable. ................................... 27

      i.   The district court should have found that the cost of attendance
           for willing witnesses factor is neutral. ......................... 27

      ii.  The district court should have found that the local interests
           factor disfavors transfer or is at least neutral. ............. 30

   G.  Databricks' Case for Transfer Is Significantly Weaker Than
       FedEx's Was. ................................................................... 34

V.  CONCLUSION ......................................................................37

# TABLE OF AUTHORITIES

## Cases

*Balawajder v. Scott*,
160 F.3d 1066 (5th Cir. 1998) ................................................................ 7

*Celgene Corp. v. Peter*,
931 F.3d 1342 (Fed. Cir. 2019) ............................................................ 24

*Golden Bridge Tech., Inc. v. Nokia, Inc.*,
527 F.3d 1318 (Fed. Cir. 2008) ................................................ 14, 22, 24

*Hitsman v. United States*,
825 F. App'x 859 (Fed. Cir. 2020) ........................................................ 24

*Hormel v. Helvering*,
312 U.S. 552 (1941) ............................................................................... 24

*In re Apple Inc.*,
818 F. App'x 1001 (Fed. Cir. 2020) .......................................... 1, 4, 8, 37

*In re Apple Inc.*,
979 F.3d 1332 (Fed. Cir. 2020) ....................................................... 13, 25

*In re Apple Inc.*,
No. 2022-128, 2022 U.S. App. LEXIS 10947 (Fed. Cir. Apr. 22, 2022) . 8

*In re Apple Inc.*,
No. 2023-120, 2023 U.S. App. LEXIS 5251 (Fed. Cir. Mar. 6, 2023) .. 17

*In re Atlassian Corp. PLC*,
No. 2021-177, 2021 U.S. App. LEXIS 33790
(Fed. Cir. Nov. 15, 2021) ................................................................ 18, 19

*In re Chamber of Commerce of the U.S.*,
105 F.4th 297 (5th Cir. 2024) ................................................. 6, 7, 8, 26

*In re Clarke*,
  94 F.4th 502, 508 (5th Cir. 2024)..................................................*passim*

*In re Dish Network L.L.C.*,
  No. 2021-182, 2021 U.S. App. LEXIS 31759
  (Fed. Cir. Oct. 21, 2021) ........................................................10, 12, 16

*In re FedEx Corp. Servs., Inc.*,
  No. 2022-156, 2022 U.S. App. LEXIS 28988
  (Fed. Cir. Oct. 19, 2022) ............................................................*passim*

*In re Google LLC*,
  58 F.4th 1379 (Fed. Cir. 2023) ...................................................*passim*

*In re Google LLC*,
  823 F. App'x 982, 983 (Fed. Cir. 2020) ...............................................2

*In re HP Inc.*,
  No. 2018-149, 2018 U.S. App. LEXIS 27963
  (Fed. Cir. Sep. 25, 2018)..............................................................16

*In re Hulu, LLC*, No. 2021-142,
  2021 U.S. App. LEXIS 22723
  (Fed. Cir. Aug. 2, 2021) ...........................................................18, 19

*In re Juniper Networks, Inc.*,
  14 F.4th 1313, 1322 (Fed. Cir. 2021) ..........................................24, 25

*In re Planned Parenthood Fed'n Am., Inc.*,
  52 F.4th 625 (5th Cir. 2022)........................................................*passim*

*In re Radmax, Ltd.*,
  720 F.3d 285 (5th Cir. 2013) ...............................................................6

*In re SK hynix Inc.*,
  847 F. App'x 847 (Fed. Cir. 2021) .......................................................4

*In re TikTok, Inc.,*
  85 F.4th 352 (5th Cir. 2023)..........................................................*passim*

*In re True Chem. Sols., LLC,*
  841 F. App'x 240 (Fed. Cir. 2021) ...........................................4

*In re TS Tech United States Corp.,*
  551 F.3d 1315 (Fed. Cir. 2008).................................................5

*In re Verizon Bus. Network Servs.,*
  635 F.3d 559 (Fed. Cir. 2011)................................................22

*In re Vistaprint Ltd.,*
  628 F.3d 1342 (Fed. Cir. 2010)..............................................38

*In re Volkswagen of America, Inc.,*
  545 F.3d 304 (5th Cir. 2008) ..................................................5

*In re W. Digital Techs., Inc.,*
  847 F. App'x 925 (Fed. Cir. 2021) ...........................................4

## Rules, Regulation, and Statutes:

28 U.S.C. § 1404(a) .........................................................3, 5, 17

FORM 9. Certificate of Interest

Form 9 (p. 1)
March 2023

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2025-113 |
| **Short Case Caption** | In re: Databricks, Inc. |
| **Filing Party/Entity** | R2 Solutions LLC |

---

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.

2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.

3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.

4. Please do not duplicate entries within Section 5.

5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes.  Fed. Cir. R. 47.4(c).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 01/03/2025

Signature: /s/ Edward R. Nelson III

Name: Edward R. Nelson III

FORM 9. Certificate of Interest

Form 9 (p. 2)
March 2023

| 1. **Represented Entities.** Fed. Cir. R. 47.4(a)(1). | 2. **Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | 3. **Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☐ None/Not Applicable |
| R2 Solutions LLC | | Acacia Research Group LLC |
| | | Acacia Research Corporation |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| Edward R. Nelson III<br>Nelson Bumgardner Conroy PC | Brent N. Bumgardner<br>Nelson Bumgardner Conroy PC | Christopher G. Granaghan<br>Nelson Bumgardner Conroy PC |
| Carder W. Brooks<br>Nelson Bumgardner Conroy PC | Jinming Zhang<br>Nelson Bumgardner Conroy PC | John Paul Murphy<br>Nelson Bumgardner Conroy PC |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐   Yes (file separate notice; see below)   ☑   No   ☐   N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑   None/Not Applicable          ☐   Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## I.    INTRODUCTION

Databricks has failed to meet its high burden to show that the district court clearly abused its discretion by denying transfer. As this Court has recognized, the transfer analysis involves "fact-intensive matters often subject to reasonable dispute," the resolution of which is "entrusted to the discretion of the district court." *In re Apple Inc.*, 818 F. App'x 1001, 1004 (Fed. Cir. 2020) (non-precedential). The district court resolved these fact-intensive matters, finding that two factors favor transfer, two factors disfavor transfer, and the rest of the factors are neutral. Where, as here, the transfer factors were "meaningfully considered by the district court, and the court's balancing of all the relevant factors is reasonable, its decision is entitled to substantial deference." *Id.* Judge Mazzant did just that—his order is meticulous and follows Fifth Circuit law to the letter.

Databricks quibbles with the district court's conclusion as to four factors: (1) the relative ease of access to sources of proof, (2) the availability of compulsory process for unwilling witnesses, (3) practical problems, and (4) court congestion. At bottom, Databricks is asking the Court to re-weigh the evidence and reach a conclusion different than that

of the district court. But that is not this Court's role. The Court only grants mandamus, an extraordinary remedy, when the district court's decision amounts to a clear abuse of discretion. *In re Google LLC*, 823 F. App'x 982, 983 (Fed. Cir. 2020) (citations omitted). Databricks' petition falls well short of this standard.

## II.   FACTUAL BACKGROUND

R2 Solutions LLC ("R2") is the owner of over 2,000 U.S. patents (and 5,000 patents worldwide) originating with Yahoo!, the former search-engine giant. Appx382-83, ¶ 11. R2's home office is in Frisco, Texas, within the Eastern District of Texas ("EDTX"), and its President, Craig Yudell, resides in Austin, Texas. Appx381, ¶¶ 6-7. Mr. Yudell is responsible for substantial work on R2's behalf that includes managing and licensing (usually outside of litigation) R2's portfolio.  Appx382-83, ¶ 11-12.

R2 filed the underlying lawsuit against Databricks on December 28, 2023. Appx20. R2's basis for venue over Databricks in EDTX was Databricks' office in Plano, Texas (within EDTX) and Databricks' substantial Texas workforce comprised of more than 300 employees.

Appx20-26, ¶¶ 3-9. Databricks did not contest the propriety of venue in EDTX.

Databricks moved to transfer to the Northern District of California ("NDCA") pursuant to 28 U.S.C. § 1404(a). It argued that NDCA is more convenient because Databricks is headquartered there, the accused instrumentalities were developed there, prior art witnesses are there, and its employees with relevant knowledge are there. Appx125-45; Appx742-55. In response, R2 pointed out that Databricks maintains a significant presence in EDTX, numerous relevant Databricks employees are in Texas, relevant third-party witnesses are in Texas, Texas has a strong interest in resolving this dispute because, among other things, Databricks' activities relevant to R2's induced-infringement claims are uniquely connected to Texas, efficiency considerations weigh against transferring the case, R2 is located in Texas, and R2's sources of proof, including its President, are in Texas. Appx353-70; Appx756-63; Appx786-808; Appx815.

The district court denied Databricks' motion. Appx1-14. It deemed that relative ease of access to sources of proof and availability of compulsory process are neutral (Appx5-8), the cost of attendance for

willing witnesses and local interests favor transfer (Appx8-10, Appx13), and court congestion and practical problems disfavor transfer. Appx10-13. The remaining factors were uncontested and found to be neutral. Appx14. Relying on recent Fifth Circuit precedent, the district court concluded that, on balance, Databricks failed to establish that NDCA is "clearly more convenient" than EDTX because "transferring such a case to NDCA would yield minor, if any, gains at best, rather than the *significant* gain required to *actually* materialize in NDCA to warrant transfer." Appx5 (quoting *In re Clarke*, 94 F.4th 502, 508 (5th Cir. 2024)) (emphasis in original).

## III.   LEGAL STANDARD

"The legal standard for mandamus relief is demanding." *In re W. Digital Techs., Inc.*, 847 F. App'x 925, 926 (Fed. Cir. 2021). In the context of a motion to transfer, a writ of mandamus requires a showing of a "clear abuse of discretion that produced a patently erroneous result." *In re Apple Inc.*, 818 F. App'x at 1003. Mandamus must be denied "unless it is clear 'that the facts and circumstances are without any basis for a judgment of discretion.'" *In re SK hynix Inc.*, 847 F. App'x 847, 852 (Fed. Cir. 2021) (non-precedential); *see also In re True Chem. Sols., LLC*, 841

4

F. App'x 240, 241 (Fed. Cir. 2021) (non-precedential) ("We must deny mandamus unless it is clear 'that the facts and circumstances are without any basis for a judgment of discretion.'").

A party seeking to transfer venue under 28 U.S.C. § 1404(a) in the Fifth Circuit[1] bears a "significant burden . . . to show good cause for the transfer." *In re Volkswagen of America, Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008). Absent a showing that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue, the plaintiff's choice "should be respected." *Volkswagen*, 545 F.3d at 315.

In determining whether the moving party has met this significant burden, courts in the Fifth Circuit consider various private and public interest factors. *Id.* The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses, and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local

---

[1] Fifth Circuit law applies to this case. *See In re TS Tech United States Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. *Id.*

The Fifth Circuit's approach is to "avoid a mere tallying of the factors in resolving" a transfer motion. Appx4 (citing *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013) ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology.")). The district court must consider "not only each factor's outcome but also its weight to determine whether the actual convenience of [the transferee forum] is 'clearly more convenient' than that of [the transferor forum]." Appx5 (citing *In re Chamber of Commerce of the U.S.*, 105 F.4th 297, 310 (5th Cir. 2024) (quoting *Clarke*, 94 F.4th at 508) (establishing that a venue is "clearly more convenient" only when "the marginal gain in convenience will be significant" and "evidence makes it plainly obvious … that those marginal gains will actually materialize in the transferee venue.")). "And while the multi-factor analysis is informative, ultimately, 'the district court has broad discretion in

deciding whether to order a transfer.'" Appx3-4 (quoting *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998)).

## IV.    DATABRICKS HAS FAILED TO SHOW MANDAMUS IS WARRANTED.

The district court did not clearly abuse its discretion in finding that Databricks failed to show that NDCA was a clearly more convenient forum. Appx14. The district court carefully considered the facts and evidence before it, weighed each of the relevant transfer factors in accordance with applicable law, and reasonably determined that transfer was unwarranted. Notably, the district court's decision was based on recent Fifth Circuit precedent making clear that transfer is only justified when "the marginal gain in convenience will be *significant*" and the "evidence makes it plainly obvious—i.e., clearly demonstrated—that those marginal gains will *actually* materialize in the transferee venue." *Chamber of Commerce*, 105 F.4th at 304 (emphasis added); *see also* Appx5.

Furthermore, as discussed below, the district court could have easily determined that two factors it found weighed *for* transfer, in fact, weighed *against* transfer, or were at least neutral. In these circumstances, Databricks cannot show a "clear abuse of discretion that

produced a patently erroneous result." *In re Apple Inc.*, 818 F. App'x at 1003.

## A. The District Court Reasonably Denied Transfer Under Its Analysis of the Factors.

Databricks ignores key precedent in arguing that the district court erred even if its analysis of the factors was correct. *See* Pet. at 32. Indeed, the district court's decision that Databricks failed to show that NDCA would be "clearly more convenient" when two factors favor transfer, two disfavor transfer, and the rest are neutral is squarely within the latest Fifth Circuit precedent; the district court having explained that under its analysis, "transferring [this] case to NDCA would yield minor, if any, gains at best, rather than the significant gain required to actually materialize in NDCA to warrant transfer." Appx5 (citing *Chamber of Commerce*, 105 F.4th at 310 (quoting *Clarke*, 94 F.4th at 508)).

Databricks is wrong that the *Apple* case supports that the district court erred here. In *Apple*, this Court overturned the district court's analyses of several factors and determined that multiple factors weighed significantly in favor of transfer. *See generally In re Apple Inc.*, No. 2022-128, 2022 U.S. App. LEXIS 10947 (Fed. Cir. Apr. 22, 2022). In this case, however, the district court found that only two factors favor transfer (but

not significantly). This is much different than *Apple*, which also pre-dates the refined Fifth Circuit cases the district court relied upon. In short, Databricks fails to evaluate the most recent Fifth Circuit law and fails to establish that the district court erred in denying transfer.

    B.    **The District Court Reasonably Determined That the Relative Ease of Access to Sources of Proof Is Neutral**.

The district court's determination that the relative ease of access to sources of proof is neutral was not a clear abuse of discretion. Critical to the district court's finding is Fifth Circuit precedent recognizing that "when the vast majority of the evidence is electronic, and therefore equally accessible in either forum, this factor bears less strongly on the transfer analysis." *In re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2023) (quoting *In re Planned Parenthood Fed'n Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022)) (cleaned up); *see also* Appx6. Relying on this precedent, the district court concluded that "[t]his factor is neutral because the bulk of the relevant evidence is equally accessible in either venue," noting that Databricks had not presented evidence that there might be physical proof in NDCA. *Id.*; *see also In re Planned Parenthood*, 52 F.4th at 630 (declining to find an abuse of discretion when the district court found the ease of access factor did not favor transfer because "because the vast

9

majority of the evidence was electronic, and therefore equally accessible in either forum").

Databricks nevertheless faults the district court for finding this factor neutral because, in its view, "[t]his Court has . . . repeatedly held that a district court abuses its discretion in determining the sources of proof factor is neutral or disfavors transfer simply because a defendant stores its records electronically." Pet. at 21. But the two cases Databricks relies upon were decided *before* the Fifth Circuit's *TikTok* and *Planned Parenthood* decisions. Those decisions make clear that this factor can be neutral when the vast majority of evidence is electronic. *See In re TikTok,* 85 F.4th at 358; *In re Planned Parenthood*, 52 F.4th at 630; *see also In re Google LLC*, 58 F.4th 1379 (Fed. Cir. 2023); *In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021).

Even *Google*—which Databricks claims is virtually identical to this case—demonstrates that the district court did not err. Pet. at 20. The defendant in *Google* identified a plethora of evidence, including *physical evidence*, localized to NDCA, including "*[p]hysical prototypes* of the accused products," "four of the six inventors," "prosecuting attorneys,"

10

relevant former employees, and third parties that "provide[d] certain accused functionality for the accused products." *In re Google*, 58 F.4th at 1385 (emphasis added). It was because of this particular evidence that this Court found that NDCA "would clearly provide easier access to sources of proof." *Id.*

Databricks has identified no such evidence. Indeed, it pointed only to a single custodian, Reynold Xin, residing in NDCA, and noted that its technical documents are "generated and currently maintained" there. Appx5 (internal citations omitted). But Databricks admitted that the vast majority of its documents relevant to this case are electronic, asserting only that some physical evidence "might be" in NDCA. Appx6. As for R2, it established that "substantially all (if not all) of [its] documents are presently located on servers" in Texas. *Id.* (internal citations omitted). On balance, then, the district court reasonably concluded that "the mere possibility that relevant physical evidence *might be* stored in NDCA cannot outweigh the fact that the overwhelming bulk of evidence is digital and, therefore, as accessible in this district as it is in NDCA." *Id* (emphasis in original).

Databricks suggests that the district court committed error in

deeming this factor neutral "simply because [Databricks] stores its records electronically." Pet. at 21. This is incorrect. The district court considered where Databricks' documents are generated and maintained, considered Databricks' Texas workforce, considered where R2's documents are located, considered the lack of physical evidence in NDCA, and resolved that the vast majority of the parties' documents are electronic and equally accessible in either district. *See* Appx5-6. On these facts, the district court found this factor neutral, which squares with Fifth Circuit and Federal Circuit precedent. *See In re Planned Parenthood*, 52 F.4th at 630; *In re TikTok*, 85 F.4th at 358; *In re Google LLC*, 58 F.4th at 1385.[2]

It also merits discussion that, per Databricks, Apache Spark "is at

---

[2] Databricks' reliance on *DISH* is misplaced. Setting aside the fact that *DISH* pre-dates *Planned Parenthood* and *TikTok* (and, thus, did not apply them), it was undisputed in *DISH* that the defendant's documents were stored in the purported transferee forum and that *no sources of proof* were in the transferor forum. Though the district court found this factor neutral because the defendant's documents were stored electronically, this Court countered that the factor could not be neutral merely because the documents were electronic. *See In re Dish Network L.L.C.*, No. 2021-182, 2021 U.S. App. LEXIS 31759, at *6 (Fed. Cir. Oct. 21, 2021). *DISH* is distinguishable here at least because the district court found that there is evidence in both California and Texas.

the heart of the Databricks platform" that R2 accuses of infringement. Pet. at 6 (cleaned up). Apache Spark is an "open-source analytics engine" (Pet. at 6), meaning that developers from all over the country and the world contribute code and documentation. In other words, while Databricks alleges on the one hand that "all of Databricks' relevant evidence is generated and maintained in NDCA, and the key document custodians live there" (Pet. at 19), it alleges on the other hand that "the heart" of the accused instrumentalities is open-source and, by definition, subject to development activities spanning the globe. These positions are, thus, largely irreconcilable.[3] The development of, and proof regarding, Apache Spark is not localized to NDCA or any other, single locale. This fact buttresses the district court's finding that access to proof is neutral for the transfer analysis.

---

[3] To the extent Databricks would allege this position constitutes new argument, this Court should nevertheless consider it. On the same day Databricks filed its Petition, Databricks stipulated to the district court that Apache Spark open-source code is representative of Databricks' source code for the accused instrumentalities. *See* SAppx13-14. This is R2's first opportunity to address how Databricks' inconsistent representations about the accused system impacts the transfer analysis. *See In re Apple Inc.*, 979 F.3d 1332, 1337 (Fed. Cir. 2020) (considering new arguments in mandamus because doing otherwise would be "unfair under the circumstances").

## C.   The District Court Reasonably Determined That the Availability of Compulsory Process to Secure Witness Attendance Is Neutral.

The district court did not abuse its discretion in determining that the availability of compulsory process to secure witness attendance is neutral. Both parties presented evidence of relevant third-party witnesses who are subject to the subpoena power in one district but not the other. R2 identified Paul Reidy, "a Texas resident who negotiated licensing agreements for the patent-in-suit and, consequently, has information relevant to Plaintiff's damages case." Appx7. R2 also identified four Texas companies. *See* Pet. at 22; Appx917-18; Appx921; Appx942; Appx963; Appx984. Databricks identified two inventors in California, two companies based in California, and alleged prior art witnesses who are purportedly in California. *See* Pet. at 22.[4]

---

[4] For the first time in its Petition, Databricks alleges that "several individuals with knowledge of R2's business transactions related to the '610 patent" are relevant third-party witnesses located in California. *See* Pet. at 22. That those individuals should be considered third-party witnesses under this factor is new argument that R2 did not have the opportunity to address previously; thus, the argument was waived and should be disregarded. *See, e.g.*, *Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322 (Fed. Cir. 2008). Nevertheless, Databricks omits the fact that Marc Booth is an officer of R2 and is, thus, a party witness, Kirsten Hoover is an employee of R2's parent company, Acacia Research

14

In finding this factor neutral, the district court noted, consistent with Fifth Circuit precedent, that this factor is accorded less weight because "neither party asserts that any non-party witness is unwilling to attend trial." Appx8; *see also In re Planned Parenthood*, 52 F.4th at 630-31. The district court also recognized, based on the well-established rule that a motion to transfer is adjudicated as of the time the motion is filed, that a determination of what prior art is relevant is "premature before the invalidity contention deadline." Appx7-8. As R2 pointed out, Databricks could only then "speculate as to what constitutes relevant prior art because invalidity contentions [had] not yet been served," and "allowing Defendant to consider prior art witnesses without requiring [Defendant] to actually use the references invites substantial gamesmanship in identifying references to inflate the number of relevant prior art witnesses." Appx7 (internal citations omitted).

Databricks makes two unavailing arguments that the district court clearly abused its discretion. First, Databricks claims that the district court improperly "dismissed *every* witness as not relevant because the

---

Group, and Eric Lucas is a former R2 officer. *See id*. These people are hardly fairly characterized as unwilling third-party witnesses.

record lacked evidence that these witnesses would not voluntarily show up at trial." Pet. at 23 (emphasis in original). This is untrue. The district court explicitly noted that it is improper to accord this factor "no" weight in such circumstances; then explicitly accorded the factor "less weight" consistent with Fifth Circuit opinions. *See* Appx8. Databricks ignores that the district court considered the third parties identified by *both* sides, noted that neither side established that the witnesses were unwilling, determined that the factor should be afforded less weight, and ultimately found it to be neutral. *See* Appx6-8. This was not an abuse of discretion, and Databricks is simply wrong that the district court "side-step[ped] a case-specific analysis" based on dicta from *TikTok*.[5] Pet. at 24. Moreover, the two cases Databricks relies upon do not support that the district court abused its discretion. In both *DISH* and *HP*, "no party identified a non-party witness in Texas." *In re Dish,* 2021 U.S. App. LEXIS 31759 at *7; *In re HP Inc.*, No. 2018-149, 2018 U.S. App. LEXIS

---

[5] It is not clear why Databricks contends that *TikTok*'s holding is dicta. In *TikTok*, the Fifth Circuit held that the district court did not err in finding this factor neutral when the petitioner had not identified any unwilling non-party witnesses. *TikTok*, 85 F.4th at 361. That is the Court's decision, not dicta.

27963, at *7 (Fed. Cir. Sep. 25, 2018). Here, the district court recognized that R2 identified Paul Reidy, a non-party witness in Texas with information relevant to damages. Appx7.

Second, Databricks alleges that the district court erred by affording Databricks' purported prior art witnesses little weight because no invalidity contentions had yet been served. But Databricks cites no authority for that proposition, arguing only that the district court's determination was "antithetical" to the purpose of Section 1404. Pet. at 25.[6] The district court's finding was a straightforward application of the principle that motions to transfer are adjudicated based on the date that the motion is filed. Appx7 n.1. The district court reasonably recognized that the identity of relevant prior art witnesses is speculative before a defendant serves its invalidity contentions. Finding otherwise would allow a defendant to claim that any number of purported prior art

---

[6] Databricks also takes this opportunity to criticize the district court for the timing of the ruling on the transfer motion. But Databricks' own conduct and case law belies that position—unlike in the *Apple* case, Databricks never moved to stay the *Markman* hearing, and the district court here ruled on the transfer motion prior to holding the *Markman* hearing. *See generally In re Apple Inc.*, No. 2023-120, 2023 U.S. App. LEXIS 5251, at *6 (Fed. Cir. Mar. 6, 2023).

witnesses are relevant without actually committing to any particular prior art. In other words, it would allow a defendant to artificially tip the scales in favor of transfer by pointing to individuals who very well may not be relevant. This is simply too conjectural to fairly impact the transfer analysis, and the district court properly found that such determinations are "premature before the invalidity contentions deadline." Appx8.

Neither case cited by Databricks supports that the district court clearly abused its discretion in this regard. In *Hulu*, this Court found that the district court erred when it "provided no [case-specific] analysis whatsoever to cast doubt that [those] particular prior art witnesses would play a role in an upcoming trial other than speculation that they would be 'unlikely to testify at trial' because generally prior art witnesses do not do so." *In re Hulu, LLC*, No. 2021-142, 2021 U.S. App. LEXIS 22723, at *8-9 (Fed. Cir. Aug. 2, 2021) (internal citations omitted). The district court in *Atlassian* committed the same error. *See In re Atlassian Corp. PLC*, No. 2021-177, 2021 U.S. App. LEXIS 33790, at *5 (Fed. Cir. Nov. 15, 2021). Furthermore, the defendant in *Hulu* identified a number of additional third-party witnesses who rendered the prior art witnesses cumulative (*see Hulu*, 2021 U.S. App. LEXIS 22723 at *8), and the

defendant in *Atlassian* demonstrated that "several of the [identified] witnesses had also been subpoenaed in related litigation" and provided declarations from such witnesses expressing a desire to not travel to Texas (*see Atlassian*, 2021 U.S. App. LEXIS 33790 at \*5).[7]

None of these facts are present here. The district court below looked at the specific facts of this case (i.e., that no invalidity contentions had been served yet) and found that Databricks' identification of potential prior art witnesses was speculative, demonstrating that the district court did not commit the error discussed in *Hulu* or *Atlassian*. Unlike in *Hulu*, Databricks has not put forth other third-party witnesses that tip the scales in favor of transfer. And unlike in *Atlassian*, Databricks did nothing to solidify potential prior art witnesses' relevance or unavailability; Databricks has not shown that such witnesses have ever been called or been relevant in other related cases, and Databricks did not provide any declarations or other evidence demonstrating that such witnesses would not travel to Texas for trial.

Finally, Databricks alleges that the district court erred with respect

---

[7] Additionally, in *Atlassian*, "no party identified a potential non-party witness in Texas." *See Atlassian*, 2021 U.S. App. LEXIS 33790 at \*5.

to the prior art witnesses related to art at issue in the IPR. *See* Pet. at 26. But Databricks mischaracterizes the district court's order. The district court did not simply justify not giving such witnesses much weight because they were identified "in a *different* case with *different* parties asserting *different* claims." *Id.* at 26 (citing Appx 8) (emphasis in original). While the district court certainly noted as much, its salient point was that an "IPR's citation to prior art is no substitute for an independent analysis of the prior art's relevance to this case; an IPR can include irrelevant prior art, and it can equally omit art that Defendant determines is relevant while preparing invalidity contentions." Appx8. Put another way, just because art is utilized in IPR does not mean that such art will be relevant to a district court case, because invalidity contentions can include completely different art. This, again, serves to emphasize why the district court was correct in finding identification of prior art witnesses to be premature, regardless of whether such witnesses were related to art at issue in IPR.[8]

---

[8] Furthermore, as R2 explained in briefing, the prior artists from IPR are likely not relevant at all. In its order denying institution, the "PTAB offered highly-detailed analysis explaining why the alleged prior art is

### D.    The District Court Reasonably Determined That Practical Problems Disfavor Transfer.

The district court's determination that practical problems disfavored transfer was not a clear abuse of discretion. To the contrary, Judge Mazzant followed the law, relying on the same cases now cited by Databricks in the Petition. *Compare* Appx11-12 *with* Pet. at 27-29. The district court correctly considered its past experience with the patent-in-suit, which included two previous claim construction opinions (not including this case) within the last three years. There is nothing improper about this, and the district court explained that "[i]n the interest of maximizing judicial economy, however limited that may be, the Court is compelled to leverage its past experience in handling this litigation and finds that this factor weighs against transfer." Appx12.

Databricks' arguments on this issue are convoluted and appear to repackage points made with respect to other factors, namely, those related to witnesses and access to sources of proof. *See* Pet. at 29. But Databricks' relevant points seem to be (1) that the district court's

---

not reasonably likely to render any claims of the '610 patent invalid," and "it would be foolhardy for Databricks to allege invalidity in this case based on art the PTAB already deemed insufficient." Appx760.

experience is too aged to be helpful, and (2) that the previous cases were significantly different. *See id.* at 27-28. Databricks is wrong on each count.

As to the first argument, the district court has continuously heard cases (sixteen) on this patent for three years, and it has construed the patent on two separate occasions, most recently in April 2023 (eight months before the present suit). *See* Appx758-59; Pet. at 28. This is much more relevant experience than a single case that occurred more than five years previously, as was at issue in *Verizon. See In re Verizon Bus. Network Servs.*, 635 F.3d 559, 562 (Fed. Cir. 2011). And while Databricks casts aspersions at the efficiencies born of the district court's experience because new IPRs were filed, Databricks waived this argument by not raising it at the district court level. *See, e.g.*, *Golden Bridge Tech.*, 527 F.3d at 1322 ("a federal appellate court does not consider an issue not passed upon below"). In any event, that IPRs were filed does not somehow destroy the district court's relevant experience—if anything, it emphasizes it, because the IPR materials would be the only new material the district court would be required to familiarize itself with, while a new court would have to start from scratch.

Regarding the second argument, it is incorrect that the past cases are so different as to render the district court's experience irrelevant. Indeed, "[a]ll of the accused products and systems in the sixteen prior cases [before Judge Mazzant] asserting the '610 patent implemented Apache Spark, which, per Databricks, is at the heart of this case." Appx758 (internal citations omitted).

The district court correctly found that this factor weighs against transfer.

### E.    The District Court Reasonably Determined That Court Congestion Disfavors Transfer.

The district court did not abuse its discretion in determining that court congestion disfavors transfer. To the contrary, the district court followed Fifth Circuit precedent and accorded this factor its proper weight.

Databricks raises two arguments to suggest the district court abused its discretion. First, Databricks argues that this factor cannot weigh in favor of transfer because R2 is a non-practicing entity. Second, Databricks takes issue with the district court's assessment of its own docket and alleges that it erred by considering its scheduling order. Both arguments are unavailing.

As an initial matter, Databricks waived its first argument by not raising it with the district court. *See Golden Bridge Tech.*, 527 F.3d at 1322 ("a federal appellate court does not consider an issue not passed upon below"); *see also Hitsman v. United States*, 825 F. App'x 859, 861 (Fed. Cir. 2020) (quoting *Hormel v. Helvering*, 312 U.S. 552, 556 (1941)) ("[o]rdinarily, we 'do[] not give consideration to issues not raised below.'"); *Celgene Corp. v. Peter*, 931 F.3d 1342, 1356 (Fed. Cir. 2019) ("hearing new arguments for the first time on appeal" is disfavored "absent limited circumstances"). Databricks certainly could have argued to the district court that R2 is a non-practicing entity and is not entitled to have this factor weigh in its favor. Databricks did not do so, and yet it asks this Court to issue a writ of mandamus to Judge Mazzant based largely on a theory that Databricks never argued. This is improper.

In any event, Databricks' NPE argument is wrong. Crucial to this Court's decisions in *Google* and *Juniper* was the fact that no evidence of record demonstrated an "urgency to case resolution" (*Google*, 58 F.4th at 1383) or the "need of quick resolution" (*In re Juniper Networks, Inc.*, 14 F.4th 1313, 1322 (Fed. Cir. 2021)). Such is not the case here, as evidence of record establishes urgency. *See* Appx381-84; SAppx16-17. Mr. Yudell

explained in his original declaration that R2's "business activities" include management of its substantial patent portfolio and "substantial licensing efforts," which are "extensive and ongoing." Appx382-83. Mr. Yudell has also explained that there is "urgency in resolving this litigation" because "whether R2 is able to resolve litigation expeditiously through settlement or judgment impacts R2's ongoing licensing efforts in the sense that a positive result begets more positive results and diminishes the need for future litigation." SAppx16-17.[9] Indeed, the "delay caused by unwarranted transfer is antithetical to R2's business and is costly to all parties and the transferee court." *Id*. Thus, both *Google* and *Juniper* are inapposite because evidence of record demonstrates that there is urgency in resolving this case.

Moreover, Databricks' reliance upon *Google* and *Juniper* for the bald proposition that, because R2 is an NPE, this factor should be

---

[9] As discussed above, Databricks' NPE-based argument is untimely and should be deemed waived. But should this Court consider Databricks' late argument, it should also consider the supplemental declaration by Mr. Yudell because this mandamus proceeding is the first time R2 has had the opportunity to respond to Databricks' new position. *See In re Apple*, 979 F.3d at 1337 (considering new arguments in mandamus because doing otherwise would be "unfair under the circumstances").

accorded no weight under any circumstance is misplaced. Those cases pre-date Fifth Circuit's opinions in *Chamber of Commerce* and *Clarke*. Each of *Chamber of Commerce* and *Clarke* not only reaffirm that a district court is entitled to evaluate its own docket efficiency in a transfer analysis, but *Chamber of Commerce* permits analysis under this factor irrespective whether the plaintiff is entitled to argue any urgency to disposition. S*ee Chamber of Commerce*, 105 F.4th at 310; *Clarke*, 94 F.4th at 509. In other words, the Fifth Circuit permits a district court to evaluate and accord this factor weight based on its docket efficiency (versus the transferee court) without regard for the plaintiff's urgency (or lack thereof).

Regarding Databricks' second argument, Databricks again mischaracterizes the district court's ruling, alleging that it found this factor disfavors transfer because it entered an "aggressive scheduling order" and relied on facts "arising after Databricks filed its motion," namely, the entered scheduling order. This is incorrect. The district court found that, based on its assessment of its own docket, this case "will likely conclude faster in this Court than in NDCA." Appx13. The reference to the entered scheduling order simply illustrated the pace at which the

case is progressing. Pet. at 31. In essence, the district court (1) noted Federal Circuit precedent that "'to the extent docket efficiency can be reliably estimated, the district court is better placed to do so than this court,'" and subsequently estimated its own docket efficiency to find that this factor disfavored transfer. Appx13 (quoting *Planned Parenthood*, 52 F.4th at 631). This is entirely proper.

### F. The Evidence Relative to the Cost of Attendance for Willing Witnesses and the Local Interests Reinforces That the District Court's Decision Was Reasonable.

The evidence available to the district court on two other factors—the cost of attendance for willing witnesses and the local interests—reinforces that the district court reasonably determined not to transfer this case. While the district court found that both of these factors weigh in favor of transfer, the district court could reasonably have found them to weigh *against* transfer, or, at the very least, be neutral.

### i. The district court should have found that the cost of attendance for willing witnesses factor is neutral.

The district court found that the cost of attendance for willing witnesses favored transfer for three reasons: (1) "relevant potential witnesses reside in NDCA;" (2) the district court was only "reasonably certain" that one of the twenty Texas witnesses identified by R2 (namely,

Databricks' Director of Technical Solutions) "has relevant technical information" because Databricks alleged that the nineteen other witnesses focus on customer support; and (3) the district court surmised that the technical knowledge of Databricks' Director of Technical Solutions was "one degree removed from the focus of patent infringement." Appx10. But the district court should have found this factor to be neutral for a number of reasons.

First, the Director of Technical Solutions' knowledge is not at all removed from the focus of patent infringement. It appears that the district court overlooked the fact that R2 alleges induced infringement; thus, information regarding "the accused product's implementation" and "customer application integration," as well as Databricks' role in those aspects, goes to the heart of R2's claim that Databricks induces its customers to infringe. Appx10. Indeed, perhaps the most relevant information to R2's induced infringement theory is how Databricks instructs customers to implement the accused instrumentalities with their own data. This is precisely the type of information that the district court said was "removed from the focus of patent infringement." Appx10. In short, the Director of Technical Solutions' knowledge is directly

28

relevant to R2's infringement case and should not have been discounted by the district court.

Second, the evidence of record demonstrates that regardless of whether the nineteen other witnesses identified by R2 focus on customer support, they nevertheless have highly relevant technical knowledge. Indeed, "[e]ach and every one of Databricks' employees who R2 identified by name (as well as numerous others of Databricks' 300 Texas employees) explicitly tout their respective skills in Apache Spark, possess extensive credentials in engineering, and/or hold engineering titles." Appx761. Again, Databricks alleges that Apache Spark is at the heart of this case. That these individuals focus on customer support does not detract from their relevant knowledge regarding the accused instrumentalities. If anything, their focus on customer support renders them more relevant, as they would have information about how Databricks interfaces with its customers and induces them to infringe (in addition to their respective technical knowledge regarding the accused instrumentalities).

Third, the district court made no mention of, and seemingly did not account for, the fact that R2's primary witness, Craig Yudell, is a resident of Texas. *See* Appx368. Mr. Yudell has "relevant and extensive knowledge

of at least (i) the R2 patent portfolio, (ii) company ownership, operations, and financials, and (iii) the licensing of the asserted patents." *Id*. This weighs against transfer, but the district court appeared to disregard it.

At bottom, R2 (1) demonstrated (and Databricks does not dispute) that Databricks has 300+ employees in Texas (*see* Appx405), (2) identified twenty such individuals by name, including Databricks' Director of Technical Solutions (*see* Appx377-79), (3) explained and provided evidence regarding each individual's relevant knowledge (*see* Appx377-79, Appx404-546), and (4) established that its own relevant witnesses reside in Texas (Appx382). Databricks, on the other hand, identified only *one* relevant witness (Reynold Xin) and generically alleged that the accused instrumentalities are developed in NDCA by unnamed engineers (which is misleading because Apache Spark is open-source, as discussed above). On balance, the district court should have found this factor to be neutral.

### ii.   The district court should have found that the local interests factor disfavors transfer or is at least neutral.

The district court found that the local interest factor favors transfer because of the "accused product's research, design, and development" in

California. Appx13. While the district court recognized that "this factor focuses on the location of the events giving rise to the suit," the district court seemingly overlooked evidence demonstrating that events giving rise to R2's induced infringement claims are centered in the Eastern District of Texas, emphasizing that this factor disfavors transfer or is, at the very least, neutral. *Id.*

Under Fifth Circuit law, "the location of the injury, witnesses, and the plaintiff's residence are useful proxies for determining what local interests exist in each venue." *Clarke*, 94 F.4th at 511. It is undisputed that R2 resides in EDTX, and there are relevant witnesses in both EDTX and NDCA as discussed above. The other proxy, "location of the injury," demonstrates why Texas has a superior interest to California in hearing this case.

As set forth in R2's briefing, Databricks has a single Texas office, which is in EDTX. *See* Appx362. Databricks' Texas workforce is over 300 strong. *Id*. One member of Databricks' Texas workforce is the Director of Technical Solutions, who "lead[s] the Spark and Cloud Technical Solutions team for the Americas" and is the "[g]lobal lead for Spark Solutions Team." Appx362 (internal citations omitted). Per Databricks,

the Texas workforce is focused on customer support, which includes field engineering. *See* Appx755. So the Director of Technical Solutions, who leads Databricks' customer-facing Apache Spark Technical Solutions Team (which includes field engineers) for the Americas and the world, is based in the Dallas-Fort Worth Metroplex in Texas. And Databricks has just one office in the Dallas-Fort Worth Metroplex, which is in EDTX. *See* Appx362.

Texas's particularized interest is clear, then. Databricks' efforts to induce its customers to infringe are centered in Texas, where its national and global leader of the Apache Spark Technical Solutions Team is based. Such connection is unique to Texas and demonstrates why California's interest is secondary. Indeed, Databricks directly infringes all over the nation, including in Texas and California, by selling and using the accused instrumentalities. Databricks likewise directly infringes all over the nation, including in Texas and California, when it makes the accused instrumentalities by deploying them onto customers' clouds. While Databricks alleges that development of the accused instrumentalities is localized to NDCA, this is belied by Databricks' assertion that Apache Spark is both at the heart of this case and open-source—it is developed

by contributors spanning the globe, so again, this is not unique to California. But Databricks hub for inducing its customers to infringe is uniquely *in Texas*, nowhere else, as indicated by the Apache Spark Technical Solutions Team leader being in Texas and all of the Databricks 300+ Texas employees being dedicated to customer support. *See also* Appx797-98. Texas, then, out of all other potential forums, has a unique interest in deciding this case, because "events that gave rise" to R2's induced infringement claims originated uniquely in Texas. *In re FedEx Corp. Servs., Inc.*, No. 2022-156, 2022 U.S. App. LEXIS 28988, at *5 (Fed. Cir. Oct. 19, 2022).

On the other hand, the only evidence produced by Databricks regarding NDCA's interest is that Databricks is there, Databricks has employees there, and the accused instrumentalities (which, per Databricks, comprise nothing more than Apache Spark in relevant part) are developed there. Again, this is suspect, given that Apache Spark is open-source. But in any event, on balance, Texas has a stronger interest than California and this factor disfavors transfer. Or, at the very least, their interests are equal, and this factor is neutral.

### G.     Databricks' Case for Transfer Is Significantly Weaker Than FedEx's Was.

Databricks concludes that "this case presents an even stronger case for transfer than *FedEx* because the proposed transferee forum is not only where Databricks is headquartered and where the accused products were researched, designed, and developed, but it is also the same forum where the patent was developed and several prior art witnesses, including named inventors, are located." *Id.* 31-32 n.11; *see generally In re FedEx*, 2022 U.S. App. LEXIS 28988. While R2 maintains that the district court did not err in denying FedEx's transfer motion, Databricks clearly makes a much weaker case than FedEx did.

In *FedEx*, this Court remanded the proceeding to the district court because it "failed to sufficiently explain the bases for its conclusions regarding the witness-related factors," and this Court "decline[d] to speculate as to how the district court might have resolved each of the numerous factual disputes." *In re FedEx*, 2022 U.S. App. LEXIS 28988 at *9. In that case, R2 and FedEx each identified ten willing witnesses in EDTX and WDTN, respectively, but the court concluded that the willing witness factor was neutral. *Id.* at *2, 8-9. This Court found the district court's conclusion was ambiguous as to both the willing witness and

unwilling witness factors because "the district court failed to make any finding or provide any explanation as to whether or how the potential witnesses had relevant and material information based on the record evidence," leading to the remand. *In re FedEx*, 2022 U.S. App. LEXIS 28988 at *7-9.

Unlike FedEx, Databricks has only ever identified two willing witnesses in the transferee forum by name: Reynold Xin (Databricks' founder) and Dave Conte (Databricks' CFO). *See, e.g.*, Appx148-49. On the other hand, R2 identified *twenty* relevant witnesses in Texas. *See, e.g.*, Appx367; Appx377-79. And unlike in *FedEx*, the district court here considered the evidence carefully and found the willing witness factor favors transfer (even though R2 believes it should have found it to be neutral, as discussed above). *See* Appx6-8. The district court also carefully considered evidence regarding the unwilling witness factor and found it to be neutral, as discussed above. *See* Appx8-10. This is clearly different from *FedEx*.

Furthermore, FedEx provided evidence that WDTN "had a significant local interest" because FedEx is headquartered there and "it is where accused products were researched, designed, developed, and

maintained by individuals who continue to live and work in that community." *In re FedEx*, 2022 U.S. App. LEXIS 28988 at *4. The district court found the factor to be neutral because R2 is in Texas. *Id*. But here, the district court found the factor to favor transfer (even though it should have found it to disfavor transfer or at least be neutral, as discussed above). *See* Appx13. And as to the sources of proof factor, FedEx provided evidence that "the relevant source code, data, and software for the allegedly infringing systems" were in WDTN, and the district court found the factor to favor transfer. SAppx5. But Databricks made no such showing here, which it cannot, at least because evidence about open-source Apache Spark is widespread. And *FedEx* was decided after both *Planned Parenthood* and *TikTok*, which clarified how the access to proof factor should be analyzed.

In short, FedEx made a stronger showing for transfer than Databricks. Databricks established that: (1) it is headquartered in NDCA; (2) relevant employees are in NDCA; (3) it develops the accused instrumentalities in NDCA (except for the Apache Spark core, which is open-source and developed everywhere); (4) some third party witnesses reside within NDCA subpoena power; and (5) it has electronic documents,

accessible from anywhere, in NDCA. On the other hand, R2 established that: (1) Databricks has 300+ employees in Texas, including the Director of Technical Solutions who leads the Apache Spark customer team; (2) at least twenty of Databricks' Texas employees have highly relevant knowledge regarding Apache Spark and how Databricks induces its customers to infringe; (3) Databricks has a single Texas office for this workforce, which is in EDTX; (4) all of R2's documents are in Texas and Databricks has not established that any physical evidence is in NDCA; (5) Texas has a strong local interest because it is the hub for Databricks' activities inducing its customers to infringe; (6) EDTX has extensive experience with the patent-in-suit that spans well over a dozen cases and multiple years; and (7) time to trial will be less in EDTX as compared to NDCA. *FedEx* and this case are not comparable, and Databricks is wrong that it has shown that NDCA is clearly more convenient than EDTX.

## V.    CONCLUSION

Where, as here, the district court meaningfully considered and balanced all of the relevant transfer factors, its decision is "entitled to substantial deference." *In re Apple Inc.,* 818 F. App'x at 1004. This Court need only find "plausible support of record" for the district court's

determination to deny Databricks' petition. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1347 (Fed. Cir. 2010). As set forth above, there is far more than "plausible support of record." Databricks' petition should therefore be denied.

Dated: January 3, 2025          Respectfully Submitted,

> */s/ Edward R. Nelson III*
> Edward R. Nelson III
> ed@nelbum.com
> Christopher G. Granaghan
> chris@nelbum.com
> Carder W. Brooks
> carder@nelbum.com
> Jinming Zhang
> jingming@nelbum.com
> NELSON BUMGARDNER CONROY PC
> 3131 West 7th Street, Suite 300
> Fort Worth, Texas 76107
> Tel: (817) 377-9111
>
> *Counsel for Respondent R2 Solutions LLC*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 21(d)(1) because it contains 7,613 words, excluding the portions exempted by the rules.

In addition, this brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using MS Word – Office 365 in 14-point Century Schoolbook.

Dated: January 3, 2025          */s/ Edward R. Nelson III*
                                Edward R. Nelson III

                                *Counsel for Respondent*
                                *R2 Solutions LLC*